**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| **EDWIN D. DENNIS, JR.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:05-CV-919-T |
| ) | |
| **TOMMY THREAT, et.al** ) | |
| ) | |
| Defendant. ) | |

## DEFENDANTS' SPECIAL REPORT

COME NOW Tommy Threat, Corey Welch, Timothy Parquett, and Debbie Burke, Defendants in the above-styled cause, and submit their Special Report to the Court.

## INTRODUCTION

On September 27, 2005, Plaintiff filed his Complaint in the United States District Court for the Middle District of Alabama. On October 5, 2005, this Court ordered Defendants to file a Special Report and Answer within forty days of the date of the order. On December 6, 2005, this Court Ordered the Defendants to file their Special Report and Answer within 10 days of the Order.

Plaintiff was arrested on February 22, 2005, on the charge of Unlawful Manufacturing of a Controlled Substance and Trafficking Methamphetamine. (Exhibit A, Inmate File of Edwin D. Dennis, Jr., "Inmate File," Inmate Booking Sheet dated February 22, 2005; Exhibit B, Inmate File, Inmate Charge Sheet dated February 22, 2005.) Plaintiff was booked in the Lee County Jail that same day. (Ex. A.) The Plaintiff is awaiting trial in this matter and is, therefore a pre-trial detainee.

**PLAINTIFF'S ALLEGATIONS**

Plaintiff alleged in his Complaint that, on July 24, 2005, he was placed in a cell with a state inmate and got in a fight and was hurt. (Plaintiff's Complaint, p. 3.) He further alleged that he received inadequate medical attention. (Plaintiff's Complaint, p. 3.) Finally, he alleged that he slipped in the shower and was not given adequate medical attention. (Plaintiff's Complaint, p. 5.) In Plaintiff's "Motion for Answer to Charges," he alleges that he was put in segregation, that Defendants withheld his mail, that he has no money to buy stamps, and that he has only been allowed to access the law library once. ("Motion for Answer to Charges," pp. 2-3.)

**DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS**

Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

**I.    FACTS**

    **A.    FAILURE TO PROTECT CLAIM**

The Lee County Jail employs the following classification system: Pretrial detainees who are awaiting trial on a felony charge are housed in the F wing. Pretrial detainees who are awaiting trial on a misdemeanor charges are housed in D wing. State inmates and violent offenders are housed in the E wing. Once an inmate is sentenced, if there is no available space in the E wing, that inmate will be housed in the F wing until a space becomes available. Jail officials also separate known

enemies from one another. (Exhibit C, Affidavit of Lieutenant Corey Welch, "Welch aff.," ¶ 2; Exhibit D, Affidavit of Sergeant Tommy Threat, "Threat aff.," ¶ 2.)

The Plaintiff has caused much trouble during his incarceration at the Lee County Jail such as assaulting other inmates. On July 23, 2005, the Plaintiff was housed in the F wing of the Jail. On that day he assaulted another inmate, who was also a pretrial detainee, punching him three or four times. He was found guilty and was placed in disciplinary segregation in an isolation cell in the E wing. After the Plaintiff served his time in disciplinary segregation, he was placed in another cell in the E wing in order to keep him and the inmate with whom he had assaulted separated. (Ex. C, Welch aff. ¶ 3; Ex. D, Threat aff. ¶ 3; Exhibit E, Inmate File, Documents Regarding Assault on July 23, 2005.) On the next day, July 24, 2005, the Plaintiff started a fight with another inmate by swinging at that inmate in the E-wing of the jail. (Exhibit F, Special Report dated July 24, 2005.) The inmates were separated by jail officials. (Ex. F.) On October 14, 2005, the Plaintiff was caught giving another inmate a tattoo. (Exhibit G, Inmate File, Reports dated October 14, 2005.) On November 17-18, 2005, the Plaintiff threatened to hurt someone by stabbing them in the throat with a pen. (Exhibit H, Inmate File, Request Slips dated November 17-18, 2005.) The Plaintiff was again moved from the E-wing to the F-wing to avoid a fight. (Ex. H.)

  B.  **MEDICAL CLAIMS**

It is the policy of the Lee County Detention Facility to provide prompt medical attention to all inmates upon their request. No inmate is denied medical attention in emergency or non-emergency situations. Inmates may request medical attention via a written inmate request form, which is then submitted to a jailer so that the inmate's name may be placed on a sick call list for the inmate to be seen by the detention facility nurse or physician at their next regularly scheduled sick call visitation. Any verbal request by an inmate for medical attention also results in the inmate's

name being placed on the sick call list. In all emergency situations, inmates are transported to the East Alabama Medical Center emergency room. (Ex. C, Welch aff. ¶ 4; Ex. D, Threat aff. ¶ 4.) Inmates are never denied necessary medical care or attention. (Ex. C, Welch aff. ¶ 5; Ex. D, Threat aff. ¶ 5.)

The Plaintiff complains of denial of medical treatment after the July 24, 2005, altercation and after a fall in the shower on September 15, 2005. (Plaintiff's Complaint, pp. 3-4.) However, the records show that the Plaintiff was seen by the Nurse on July 24, 2005, and that the Nurse noted no signs of trauma to his mouth or teeth. (Exhibit I, Inmate Medical File[1] of Edwin D. Dennis, Jr., "Medical File," Notes dated July 24, 2005.) The Plaintiff was seen by the doctor on July 27, 2005, and was prescribed medication. (Exhibit J, Medical File, Notes dated July 27, 2005.) The doctor ordered x-rays which showed no evidence of fracture. (Exhibit K, X-ray records dated July 27, 2005.) On July 29, 2005, the Plaintiff requested to be placed on the dental list, and his request was granted. (Exhibit L, Inmate File, Request Slip dated July 28, 2005.) The Plaintiff was taken to the dentist for an extraction on August 11, 2005. (Exhibit M, Inmate File, Record of Medical Examination dated August 12, 2005.)

On September 8, 2005, the Plaintiff requested to see the nurse because he fell and hurt his shoulder. (Exhibit N, Inmate File, Request Slip dated September 8, 2005.) He was seen and treated by the doctor on September 13, 2005. (Exhibit O, Inmate File, Notes and Charge Form dated September 13, 2005.)

Furthermore, the medical records show that the Plaintiff was treated several other times while incarcerated at the Lee County Jail. (Exhibit P, Medical File, Other Medical Records.)

---

[1] See Exhibit W, Affidavit of Linda Stewart for certification of medical records.

4

The records show that the Plaintiff was given his prescribed medication. (Exhibit Q, Medical File, Records regarding Plaintiff's Medication.)

  C. **CONDITIONS OF CONFINEMENT CLAIMS**

Inmates are provided with shower mats. (Ex. C, Welch aff. ¶ 7; Ex. D, Threat aff. ¶ 7.) There is no report in the file showing that the Plaintiff ever fell as he alleged. (Ex. C, Welch aff. ¶ 6; Ex. D, Threat aff. ¶ 6.) If a drain in the shower areas of the jail become stopped up, a jail staff member will remedy the situation by using Drain-O in the affected area as soon has he/she is notified. (Ex. C, Welch aff. ¶ 8; Ex. D, Threat aff. ¶ 8.) The medical records of the Plaintiff show that he injured his shoulder by wrestling in his cell prior to June 7, 2005, and that he had already had problems with his shoulder for years. In fact, the medical records showed that the shoulder had arthritis. (Exhibit R, Inmate File, Request Slips dated June 1 and July 18, 2005; Exhibit S, Medical File, Notes April 6 and June 7, 2005.) No inmate, including the Plaintiff, is ever subject to arbitrary discipline. No inmate, including the Plaintiff, is ever disciplined as a result of that inmate filing a civil suit against jail officials. (Ex. C, Welch aff. ¶ 9; Ex. D, Threat aff. ¶ 9.)

  D. **ACCESS TO COURTS CLAIM**

Jail staff members have never withheld the Plaintiff's mail or any other inmate's mail. (Ex. C, Welch aff. ¶ 10; Ex. D, Threat aff. ¶ 10.) Stamps, envelops, and writing materials are available for purchase at the jail commissary. Indigent inmates are provided with these materials at no cost. (Ex. C, Welch aff. ¶ 11; Ex. D, Threat aff. ¶ 11.) The records show that the Plaintiff was provided with free stamped envelops upon his request several times. (Ex. C, Welch aff. ¶ 12; Ex. D, Threat aff. ¶ 12; Exhibit T, Inmate Request Slips requesting stamped envelops.) Inmates are always given, and the records indicate that the Plaintiff was given, reasonable opportunities to utilize the law

library. (Ex. C, Welch aff. ¶ 13; Ex. D, Threat aff. ¶ 13; Exhibit U, Inmate Request Slips requesting to visit the law library.)

### E. PLAINTIFF'S NONCOMPLIANCE WITH THE GRIEVANCE PROCEDURES OF THE LEE COUNTY JAIL

Internal grievance procedures at the Lee County Jail are available to all inmates. It is the policy of the Lee County Sheriff's Department that inmates are permitted to submit grievances and that each grievance will be acted upon. The inmates are given an Inmate Grievance Form to complete and return to a Lee County Jail staff member for any grievances they may have. At no time, however, did the Plaintiff file any grievances concerning any of the claims made in his Complaint. Had such a grievance been filed, it would be in the Plaintiff's inmate file. Upon review of the file, there is no grievance present.[2] If a grievance was filed, it would have been acted upon accordingly, (that is, whether an investigation was needed or simply a response made to the complaints). (Ex. C, Welch aff. ¶ 14.)

## II. LAW

### A. All claims by Plaintiff against Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to

---

[2] The remainder of the Plaintiff's inmate file not previously identified as separate exhibits is attached hereto as Exhibit V.

Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983 (emphasis added). The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Any claims against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted. Id.; Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).

**B. Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

**1. Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him. First, the Plaintiff has not exhausted the grievance procedures provided at the Lee County Jail. Secondly, he has not alleged that he pursued any grievance through the State Board of Adjustment. See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). Plaintiff did not file a grievance with the Lee County Jail.

In addition to the grievance procedure at the local level, Alabama law provides the

7

opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60. The Sheriff of Lee County is a state officer, as are his alter egos, and therefore would be entitled to sovereign immunity. See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998). Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a). See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies).

    **2.**    **Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . . In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis." Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002). Because Plaintiff has not made a showing of physical injury that is greater than de minimis, his Complaint is due to be dismissed.

    **C.**    **Alternatively, Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants were acting within their discretionary authority as jail officials of Lee County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their job duties. See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252

8

(11th Cir. 2004). Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful. He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or

9

federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

Plaintiff cannot meet his burden of demonstrating a constitutional violation or showing that clearly established law provided the Defendants with fair warning that their conduct was unlawful. Therefore, Defendants are entitled to qualified immunity.

### 1.   Failure to Protect Claim

"[N]ot . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer v. Brennan, 511 U.S. 825, (U.S. 1994). A jail officer only violates the Eighth Amendment when two conditions are met: (1) the inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm" and (2) "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 834 and 837. Where the inmate had not requested protection from the other inmate involved and where the officer had no knowledge of a threat prior to the injury, a plaintiff's failure to protect claim must fail. Carter v. Galloway, 352 F.3d 1346, 1350-1351 (11th Cir. 2003). "[A]n official's failure to alleviate a significant risk that he

should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer v. Brennan, 511 U.S. 825, 838 (U.S. 1994).

In the instant case, Plaintiff has not shown that he was subjected to a substantial risk of serious harm, nor can he show that either Defendant was aware of any such risk. In the fight of which he complains, he actually instigated the physical contact. Furthermore, he was moved to that particular wing of the jail in order to separate him and another inmate that Plaintiff had assaulted. Later, when the Plaintiff threatened to stab someone, the Plaintiff was moved again. The Defendants did everything they could to keep Plaintiff from getting in fights. However, the Plaintiff still instigated fights no matter which cell block in which he was placed. Because Plaintiff has not shown that Defendants were deliberately indifferent to a substantial risk of serious harm, his claim for failure to protect must fail.

### 2. Medical Claims

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Mere negligence does not suffice to prove deliberate indifference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence."). Furthermore, where a prisoner has received medical

11

attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

In the instant case, the evidence shows that, on the two occasions where the Plaintiff complains he did not receive adequate medical treatment, he was actually treated by a licensed and trained medical doctor. On the first occasion, after the Plaintiff got into a fight, the nurse saw him and ordered an appointment with the doctor. The doctor ordered x-rays that were normal. The Plaintiff then saw a dentist for tooth extractions. In the second instance, the Plaintiff saw the doctor for his shoulder pain. The jailers did their duties in getting the Plaintiff to see Nurse Burke for evaluation. Nurse Burke did her duty in referring the Plaintiff to the medical doctor and seeing to it that he was treated and that his medication was dispersed. Clearly, Plaintiff has not shown that Defendants were in any way deliberately indifferent to any serious medical need of the Plaintiff.

An inmate does not have a right to a *specific* kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such treatment is not a federal constitutional question***") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096

(1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

Furthermore, the Defendants who are jailers do not have any kind of medical education, training or experience. They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates. While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim. In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[3] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

In the instant case, the evidence shows that Plaintiff was treated by the Jail Nurse, the Jail Medical doctor, and the dentist, for all his medical problems. The jailers, who are not trained and licensed medical providers, are in no way responsible for second-guessing the judgments of

---

[3] The medical director was a trained and licensed nurse. 302 F.3d at 846.

13

nurses and doctors. Furthermore, Nurse Burke, like the director in <u>Meloy</u>, cannot, and should not, second guess the judgment of the Plaintiff's medical doctor. Therefore, Defendants are entitled to qualified immunity from Plaintiff's claims.

        3.        **Access to Courts Claim**

> "[T]he fundamental constitutional right of access to the courts requires prison authorities to ... provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law." The Supreme Court, however, has clarified that prisoners' contentions of deprivations of access to courts must show actual injury as a "constitutional prerequisite." While *Bounds* guarantees the right of access to the courts under the Fourteenth Amendment, prisoners have no inherent or independent right of access to a law library or to legal assistance. Instead, they must show actual injury in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."

<u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1290 (11th Cir. 1998) (internal citations omitted). In <u>Lewis v. Casey</u>, the United States Supreme Court made it clear that, in order to prevail on a claim that an inmate's right to access to courts has been violated, the inmate must establish prejudice by "demonstrat[ing] that the alleged shortcoming in the library or legal assistance program [or other alternative provided] hindered his efforts to pursue a legal claim." <u>Lewis v. Casey</u>, 116 S. Ct. 2174 (1996). To establish such prejudice, an inmate must "show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known, or that he suffered arguably, actionable harm that he wished to bring before the courts, but was so stymied by inadequacy of the law library that he was unable to even file a Complaint." <u>Id.</u>

The Plaintiff has failed to demonstrate that he was, in any way, prejudiced, in any manner whatsoever, in any court where he has had criminal or civil matters pending. For his criminal

charges, he has access to an attorney. For the instant civil matter, it is obvious that Plaintiff was able to file his Complaint as well as a subsequent document with this Court. Furthermore, the evidence shows that the Plaintiff had access to the law library and was given free stamped envelops for mailing. The Plaintiff has not alleged any facts sufficient to maintain a claim that he suffered a constitutional deprivation due to any alleged denial of access to courts, based on any alleged deficiencies at the Lee County Jail.

### 4.     Conditions of Confinement Claims

In order to establish a conditions of confinement claim Plaintiff "must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], (2) the defendant[s'] 'deliberate indifference' to that condition, and (3) causation. Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (first element); Wilson v. Seiter, [502] U.S. [294, 303], 111 S. Ct. 2321, 2327, 115 L.Ed.2d 271 (1991) (second element); Williams v. Bennett, 689 F.2d 1389-90 (11th Cir. 1982) (third element). Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry. Wilson v. Seiter, 502 U.S. at 290.

In terms of the subjective component, "[t]o be deliberately indifferent, a [jail] official must knowingly or recklessly disregard an inmate's basic needs." LaMarca v. Turner, 995 F.2d at 1535. "[A] plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" Id. (quoting Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985), cert. denied, 479 U.S. 816 (1986). There must be evidence that the official "knows of and disregards an excessive risk to inmate

health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994). The Court equates the level of culpable intent required to the standard employed in the context of *criminal* recklessness prosecutions. Id. at 1979-80. No liability can be attributed to "an official's failure to alleviate a significant risk which he should have perceived but did not." Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996). Where jail officials attempt to remedy constitutional short-comings but fail to do so, the official cannot be found to have been "deliberately indifferent" unless the official knew of but disregarded appropriate effective alternatives. LaMarca, 995 F.2d at 1536. In addition, Plaintiff must also show that Defendants had some personal involvement in the alleged deprivation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). Plaintiff cannot show that Defendants have been deliberately indifferent to conditions at the Lee County Jail. Deliberate indifference to an inmate's health or safety can only be shown if the defendants know that the inmate faces a substantial risk of serious harm and disregard the risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825 (1994).

Plaintiff has failed to allege or offer any evidence sufficient to sustain a claim that any of the alleged conditions of confinement constituted cruel and unusual punishment. In this case, none of the conditions of which Plaintiff complain constitutes an excessive risk to his health or safety. Further, Plaintiff never filed a grievance concerning his allegations, and there is no other evidence showing that the Defendants knew of or disregarded any alleged risk. It is clear from the evidence that Defendants acted according to established lawful policies and procedures with regard to Plaintiff. Based on the foregoing, it is clear that Defendants have not violated Plaintiff's constitutional rights. Further, Plaintiff cannot show that clearly established law

provided Defendants with fair warning that their conduct was unlawful. Therefore, Defendants are entitled to qualified immunity.

      **D.**      **Plaintiff has failed to allege sufficient personal involvement on each claim.**

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation. <u>Swint v. City of Wadley</u>, 51 F. 3d 988 (11th Cir. 1995). The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury. <u>Zatler v. Wainwright</u>, 802 F. 2d 397 (11th Cir. 1986).

      **1.**      **Plaintiff's medical claims, conditions of confinement claims, and access to courts claim against Corey Welch, Tommy Threat, and Timothy Parquett must fail because they had no personal involvement in the alleged constitutional violation.**

The Plaintiff has failed to allege that these Defendants were in any way personally involved in any alleged violation of Plaintiff's constitutional rights concerning any of the conditions of his confinement. Plaintiff has offered no allegation demonstrating that this named Defendant was in any way involved in the actions he claims were constitutionally infirm. There are absolutely no facts to show that these Defendants personally participated in these claims, nor does the Plaintiff allege specifically how these Defendants violated his constitutional rights in regard to these claims. As such, Plaintiff's medical claims, his conditions of confinement claims, and his access to courts claim are due to be dismissed against these Defendants.

To the extent that Plaintiff's claims are an attempt to hold Defendants liable under a *respondeat superior* theory, his claim must similarly fail.

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when

there is a causal connection between actions and the supervising official and the alleged constitutional violation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged depravation, and he fails to do so.

Dolihite v. Maughon, 74 F.3d 1027, 1052 (11th Cir. 1996).

> **2. Plaintiff's failure to protect claim, conditions of confinement claim, and access to courts claim against Debbie Burke must fail because she had no personal involvement in the alleged constitutional violation.**

The Plaintiff has failed to allege that Debbie Burke was in any way personally involved in Plaintiff's failure to protect claim, conditions of confinement claim, and access to courts claim. Plaintiff has offered no allegation demonstrating that Burke was in any way involved in the actions he claims were constitutionally infirm with regard to these claims. There are absolutely no facts in the Complaint to show that Burke violated Plaintiff's constitutional rights in regard to these claims. Furthermore, as Jail Nurse, Burke had no duty in regard to these claims. As such, Plaintiff's failure to protect claim, conditions of confinement claim, and access to courts claim are due to be dismissed against Nurse Burke.

### F. Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A.

Miller, Federal Practice and Procedure § 2529, p. 299.[4]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

## CONCLUSION

Defendants deny each and every allegation made by Plaintiff Edwin D. Dennis, Jr., in the Complaint.  Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 16th day of December, 2005.

> **s/Amanda Kay Morgan**
> KELLY GALLOPS DAVIDSON Bar No. DAV123
> AMANDA KAY MORGAN Bar No.  ALL079
> Attorneys for Defendants
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  aallred@webbeley.com

---

[4] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

**CERTIFICATE OF SERVICE**

      I hereby certify that on this the 16th day of December, 2005, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

      **Edwin Dee Dennis, Jr.**
      AIS# 210963
      Lee County Detention Center
      PO Box 2407
      Opelika, AL 36801

                                **s/Amanda Kay Morgan**
                                OF COUNSEL